UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

STANLEY JACKSON                                CIVIL ACTION NO. 3:19-cv-00388

VERSUS                                         JUDGE TERRY A. DOUGHTY

FAMILY DOLLAR STORES OF                        MAG. JUDGE KAREN L. HAYES
LOUISIANA, INC., ET AL.

RULING

Pending before the Court is a Motion for Summary Judgment [Doc. No. 26] filed by

Defendant Family Dollar Stores of Louisiana, Inc. ("Family Dollar").  Plaintiff Stanley Jackson

("Jackson") filed a Memorandum in Opposition to the motion [Doc. No. 26] Family Dollar filed

a Reply Memorandum [Doc. No. 39].

For the following reasons, the Motion for Summary Judgment is DENIED.

## I.    FACTS AND PROCEDURAL BACKGROUND

On or about April 17, 2017, Jackson alleges that he slipped and fell in a puddle of liquid

that leaked from the ceiling at a Family Dollar store located in Farmerville,  Louisiana.  [Doc.

No. 30-1, Affidavit of Stanley Jackson ("Jackson Aff."), ¶ 2-4.  When he fell, Jackson has

testified that his body left the ground and then he hit his shoulder and head.  [Doc. No. 30-4,

Deposition of Stanley Jackson ("Jackson Depo."), pp. 31:24-25, 32:1-9].  After his fall, Jackson

was unable to get up immediately.   [Doc. No. 30-1, Jackson Aff., ¶ 5].   Once he got up, he

noticed that the leak came from the air conditioning vent in the ceiling.  *Id.* at ¶¶ 6-7.

Jackson's fiancé, Jonell Simpkins ("Simpkins"), was sitting in the car and decided to

come into the store to see why Jackson was taking so long. Upon entering the store, Simpkins

encountered Jackson at the front counter and asked what happened.  When he told her that he had

fallen in a puddle of water, Simpkins proceeded to the location where Jackson fell and saw that

the floor was wet.

Family Dollar was aware that the ceiling leaked prior to this accident.  In fact, the air

conditioner caused a leak from the ceiling on and off for about three weeks prior to the alleged

accident.  [Doc. No. 26-3, Exhibit 1, Deposition of Danny Styron ("Styron Depo."), pp. 35:5-7,

36:7-11].  Family Dollar had had repairs made at this particular area "three times probably"

before Jackson's fall.  *Id.* at p. 41:1-2.  Still the ceiling leak was "regular, but it was

inconsistent." *Id.* at p. 49:5-6.  When Family Dollar was aware that water was "dripping" from

the ceiling, store employees would "have cones or a mop bucket or [a plastic] tote." *Id.* at p.

49:2-9.  When the ceiling was not leaking (to employees' knowledge), they would remove the

cones, bucket, and/or tote.

On the date of the alleged accident, no Family Dollar employees knew that the ceiling

was leaking on that particular day. *Id.* at pp. 48:21-24,  49:23-25.  No cones, buckets, or totes

were in place to warn customers there might be a leak or dripping water.  Jackson does not know

how long the puddle was present before the alleged accident.  [Doc. No. 26-4, Exhibit 2,

Deposition of Stanley Jackson ("Jackson Depo."), p. 35:6-11].  Jackson did not tell anyone at the

store about the puddle prior to his alleged fall, and he  does not know of anyone else who told the

store employees about the water on the ground before the alleged accident. *Id.* at p. 35:12-17. 7.

There were only two employees at the store at the time, and he reported the water to one of the

employees after his fall.  [Doc. No. 30-1, Jackson Aff., ¶ 8; Doc. No. 30-4, Jackson Depo.,  p.

32: 11-12 ].

Following the accident, Jackson contends that he was in "serious pain," which continued the following day. *Id.* at ¶ 9.  He then went to the emergency room at Union General Hospital, where he had an x-ray and was advised to follow up with his personal physician. *Id.* at ¶ 10; [Doc. No. 30-2, Affidavit of Dr. Stephen Unkel ("Unkel Aff."), ¶ 2].

Jackson did follow up with his physician of a number of years, Dr. Stephen Unkel. [Doc. No. 30-1, Jackson Aff.,  ¶ 11; Doc. No. 30-2, Unkel Aff., ¶¶ 1-3].  Dr. Unkel referred him for an MRI.  [Doc. No. 30-1, Jackson Aff.,  ¶ 11; Doc. No. 30-2, Unkel Aff., ¶ 3].  He returned to see Dr. Unkel after the MRI and was advised that he had a torn rotator cuff.  [Doc. No. 30-1, Jackson Aff.,  ¶ 12; Doc. No. 30-2, Unkel Aff., ¶ 4].  Dr. Unkel recommended surgery.  [Doc. No. 30-1, Jackson Aff.,  ¶ 13; Doc. No. 30-2, Unkel Aff., ¶ 4].  Jackson had surgery in November 2018, Dr. Unkel has treated Jackson since the surgery, and Jackson reports that he still suffers pain. [Doc. No. 30-2, Unkel Aff., ¶¶ 5-6].  Based on his examination, Dr. Unkel opines that Jackson's rotator cuff injury is consistent with the fall he reported.  *Id.* at ¶ 7.

After surgery, Jackson participated in physical therapy at Union General.   Jackson contends that he cannot now sleep at night and pain persists on a daily basis [Stanley Depo. p. 79, lines 4-14].

As of the date required to identify experts, Jackson had not identified a retained expert to prove that his alleged torn rotator cuff, or any surgery to repair the same, was caused by his alleged fall at the Family Dollar in Farmerville on April 17, 2017. [Doc. No. 26-5, Exhibit 3, Plaintiff's Witness List].  Dr. Unkel was identified as a treating provider in response to Family Dollar's interrogatories, but not specifically identified as a witness.

## II.     LAW AND ANALYSIS

### A.  Summary Judgment Standard

Summary judgment is appropriate when the evidence before a court shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party.  *Id.*

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247).  "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharm. Corp.,* 283 F.3d 254, 263 (5th Cir. 2002).  Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate. *Id.*  "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).1

In evaluating a motion for summary judgment, courts "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Total E & P USA Inc. v. Kerr–McGee Oil and Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013) (citations omitted).  While courts will

"resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994). To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that a genuine issue of material fact exists. *Hamilton v. Segue Software, Inc*., 232 F.3d 473, 477 (5th Cir. 2000) (emphasis added). "'If the evidence is merely colorable, or is not significantly probative,' summary judgment is appropriate." *Cutting Underwater Tech. USA, Inc. v. Eni U.S. Operating Co*., 671 F.3d 512, 517 (5th Cir. 2012) (quoting *Anderson,* 477 U.S. at 248).

Relatedly, there can be no genuine dispute as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.,* 477 U.S. at 322-23. This is true "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 323.

## B. Merchant Liability Statute

The parties agree that Jackson's claim against Family Dollar arises under the Merchant Liability Statute. Merchants "owe[ ] a duty . . . to exercise reasonable care to keep [their] aisles, passageways, and floors in a reasonably safe condition," which "includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage." LA. STAT. § 9:2800.6(A).

> In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:
>
> (1)     The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.

(2)      The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.

(3)      The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.

LA. STAT. ANN. § 9:2800.6(B); *see also Thompson v. Winn–Dixie Montgomery, Inc.,* 181 So.3d 656, 662 (La. 2015). "'Constructive notice' means the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care. The presence of an employee of the merchant in the vicinity in which the condition exists does not, alone, constitute constructive notice, unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition." LA. REV. STAT. § 9:2800.6(B); *see also Adams on behalf of D.K. v. Wal-Mart Stores, Inc.*, 18-1706 (La. App. 1 Cir. 9/27/19), 286 So.3d 452, 454-55 ("To carry her burden of proving the temporal element . . . Ms. Adams must make a positive showing of the existence of the condition prior to the fall. . . . Though there is no bright line time period, Ms. Adams must show that 'the condition existed for such a period of time.' . . . Whether the period of time is sufficiently lengthy that a merchant should have discovered the condition is necessarily a fact question; however, there remains the prerequisite showing of some time period.").

Family Dollar contends that Jackson cannot raise a genuine issue of material fact for trial whether Family Dollar had actual or constructive notice of the condition which caused his damage, prior to the occurrence.  Jackson responds that Family Dollar either caused the condition or had actual knowledge or constructive notice of the condition prior to his fall.

Family Dollar relies on *Gray v. Wal-Mart  Louisiana, LLC,* 484 Fed. App'x. 963 (5th Cir. 2012).  In that case, the Fifth Circuit, applying Louisiana law,  considered whether knowledge of

prior roof leaks amounted to "notice" of a spill.   On the day that Gray was shopping in Wal-Mart, there were severe storms caused by Hurricane Gustav.  *Id.* at 964 After shopping for about an hour, she slipped in a puddle of clear liquid while pushing her cart down an aisle. *Id.* A Wal–Mart supervisor filled out an internal incident report that identified a hole in the roof as the "source" of the puddle.  *Id.* He later clarified in his deposition that he did not have direct knowledge, but made this "assumption" based on his knowledge of other roof leaks and the heavy rain.  *Id.*

In *Gray*, the plaintiff argued that the supervisor's knowledge was sufficient to establish a fact issue "as to whether Wal–Mart 'created the hazard because its own roof leaked or it had actual knowledge of the hazard because it knew its roof leaked."  *Id.* at 965.  The  Fifth Circuit rejected this argument,  finding that "neither the report nor any other evidence . . . shows that Wal–Mart had actual knowledge of the leak before Gray's accident occurred."  *Id.* at 965-66. The Fifth Circuit found further that there were no cases "in which comparable evidence, by itself, established that a merchant had 'created' a condition that injured a plaintiff.  Instead, for plaintiffs suing a merchant under § 9:2800.6(B)(2), courts have required proof that an employee's action caused the plaintiffs' injury."  *Id.* at 966 (citations omitted).  To meet this burden, the Fifth Circuit found that plaintiffs must point "to any evidence showing that Wal–Mart's employees were responsible for the holes in Wal–Mart's roof, []or any evidence showing that Wal–Mart was responsible for maintaining its own roof."  *Id.*

Likewise, in this case, Family Dollar contends that, while its employees were aware that the ceiling had leaked in that area, Jackson cannot show that the employees knew a leak had occurred prior to his fall and that, like Wal-Mart in the *Gray* case, it is entitled to summary judgment.

7

On the other hand, Jackson contends that his case is more analogous to *Deshotel v. Wal-Mart La., L.L.C.*, 850 F.3d 742 (5th Cir. 2017), another Fifth Circuit case.  In that case, the plaintiff claimed that she slipped on water from a leaking roof, which Wal-Mart had negligently maintained.  Applying LA. REV. STAT. § 9:2800.6 (B), the Court considered two  questions:  (1) whether Riggio[1] "provided enough evidence that a reasonable jury could find that she slipped on water that leaked through the roof, " and (2) "whether Wal-Mart's purportedly negligent maintenance of the roof could suffice to show that it "created . . . the condition which caused the damage." *Id.* at  745.  The parties disputed the facts.  Wal-Mart contended that Riggio could not establish where she fell, and that, while the store did have roof leaks, the roof leaks were only under faultily installed skylights and had been repaired before the accident.   Riggio claimed that the store had a "chronically leaky roof" that had been leaking since at least the beginning of 2012, had sprung new leaks with some regularity, and had continued to leak up to the day of Riggio's injury.

Viewing the evidence in the light most favorable to the non-movant, Riggio, the Fifth Circuit found that it was "no great logical leap to conclude that a generally leaky roof on a rainy day may have been the cause of otherwise unexplained water on the floor," raising a genuine issue of material fact for trial on the first question.  *Id.* at 747.

The Court then turned to the second question:  whether Wal-Mart's "potentially negligent maintenance of a roof can qualify as 'creation' of a hazard under Louisiana law."  *Id.*  Analyzing that issue, the Fifth Circuit reasoned:

> "[T]he wording of [§ 9:2800.6(B)(2) ] ... means there must be proof that the merchant is directly responsible for the spill or other hazardous condition." *Ross v. Schwegmann Giant Super Markets, Inc*., 734 So.2d 910, 913 (La. 1st Cir.), writ denied, 748 So.2d 444 (1999). When a defendant "maintains its own floors, the

---

[1]Riggio was the original plaintiff but died, so her administratrix, Loring Deshotel, was substituted. *Deshotel v. Wal-Mart Louisiana, L.L.C.*, 850 F.3d 742, 744 (5th Cir. 2017)

[plaintiffs] are not required to prove that it had notice or constructive notice of the possible [hazard]. If there [is] a [hazard], [defendant] created it, thus, the notice requirement of La. R.S. 9:2800.6 does not apply. . . ." *Savoie v. Sw. La. Hosp. Ass'n*, 866 So.2d 1078, 1081 (La. 3d Cir. 2004). We have held similarly to *Savoie,* suggesting that "courts have required proof that an employee's action caused the plaintiffs' injury" to impose liability under § 9:2800.6, and that because "[a]ppellants pointed neither the district court nor this court to any evidence showing that [the defendant's] employees were responsible for the holes in [the defendant's] roof, nor any evidence showing that [the defendant] was responsible for maintaining its own roof," the plaintiff failed to show that the defendant created the hazard at issue. *Gray v. Wal-Mart La., L.L.C*., 484 Fed. Appx. 963, 966 (5th Cir. 2012) (per curiam).

Synthesizing these cases, it is evident that for the defendant to have "created" the hazardous condition, it must be "directly responsible" for the plaintiff's injuries. *Ross,* 734 So.2d at 913. That direct responsibility can be shown in one of two ways—either via evidence that the defendant's employees actually created the hazard (by, for example, spilling crab salad on the floor, as was alleged in Ross) or evidence that the defendant was responsible for maintaining the area where the hazardous condition was manifest, as in *Savoie* and *Gray*.

*Deshotel*, 850 F.3d at 747–48.  The Fifth Circuit rejected Wal-Mart's argument that notice was required, finding that "plaintiffs must prove either creation of the hazard or actual or constructive notice thereof," but no notice is required "when it comes to creation of the hazard."  *Id.* at 748.  Finally, the Fifth Circuit rejected Wal-Mart's argument that it could not be found to have created the hazard because Riggio's injury was (for purposes of summary judgment) "through a failure to remedy a dangerous condition."  *Id.*  The Court found instead that "creation" includes both direct action and failure to act, such as "failure to fix a known leaky roof."  *Id.*  The Court made clear that, by reversing a grant of summary judgment, "we only permit a jury to find that Wal-Mart created the hazard; we make no such finding ourselves."  *Id.*  Finally, the Court noted that "[t]his case is close to *Gray*. But there, the plaintiff's case was deficient because the record provided evidence neither that the store was responsible for the maintenance of its own roof nor that employees had caused the roof leak."  *Id.* (citing *Gray*, 484 Fed. App'x. at 966).

In this case, the facts are different from both *Gray* and *Deshotel*.  There is no fact dispute as to what caused Jackson's fall—it appears undisputed, at least for purposes of this motion— that a leak from the ceiling caused the puddle on the floor at the store.  It is further undisputed that there were prior leaks from the ceiling at this same spot for approximately three weeks, not because of a generally leaky roof, but because of an issue with the air conditioning.  Family Dollar had attempted to have this air conditioning issue repaired at least three times.  Even so, there continued to be a leak from the ceiling at the same spot that was "regular, but  . . . inconsistent." [Doc. No. 26-3, Styron Depo., p. 49:5-6].  Apparently, it was regular enough that when an employee saw that water was "dripping" from the ceiling, store employees would "have cones or a mop bucket or [a plastic] tote" and place them in the area.  *Id.* at p. 49:2-9.  When the ceiling was not leaking (to employees' knowledge), they would remove the cones, bucket, and/or tote.

Under these circumstances, the Court finds that Jackson has presented sufficient facts to raise a genuine issue of material fact for trial whether Family Dollar created the condition that caused his fall.  As in *Deshotel*, Family Dollar was aware of and had undertaken the repair of the condition—in this case an issue with the air conditioning causing a leak from the ceiling at the vent—but had failed to successfully repair the condition.  As noted by the *Deshotel* Court, this Court's ruling only permits a jury to find that Family Dollar created the hazard; this Court makes no such finding of liability.  Likewise, at trial, Jackson must satisfy the jury that the "condition created an unreasonable risk of harm and that [Family Dollar] failed to exercise reasonable care." *Deshotel*, 850 F.3d at 748 (citing LA. REV. STAT. ANN. § 9:2800.6(B)).  Family Dollar can certainly present evidence to the jury of its three attempts to repair the air conditioning issue and its policy of placing cones and/or mop buckets and totes in the area when its employees noticed

that the ceiling was leaking again, but Jackson has raised sufficient issues of material fact for

trial for the jury to make the determinations.[2]  Family Dollar's Motion for Summary Judgment

for lack of notice under the Merchant's Liability Statute is DENIED.

### C.  Causation

Family Dollar also moves for summary judgment on the basis that Jackson cannot show

causation.  Family Dollar points out that Jackson did not identify or provide reports from a

medical expert.  In response, Jackson relies on the *Housley* presumption and an affidavit from

this treating physician.  However, Family Dollar argues that his treating physician was not

identified as a witness, and the *Housley* presumption does not relieve a plaintiff of the

responsibility to provide expert testimony.

The law recognizes a presumption establishing this causal connection between an injury

plaintiff suffered and an accident "if before the accident the injured person was in good health,

but commencing with the accident the symptoms of the disabling condition appear and

continuously manifest themselves afterwards, providing that the medical evidence shows there to

---

[2]Even if such evidence were not sufficient to show that Family Dollar "created" the condition, there is sufficient evidence of actual or constructive notice.  Family Dollar knew for three weeks prior to Jackson's fall that the air conditioning was causing a leak from the ceiling in the same spot or area.  While it had tried to repair the air conditioning, there is evidence that Family Dollar employees were aware that the repairs were not successful and that it had a contingency plan for when the ceiling leaked again.  Whether that plan was adequate or whether other steps should have been taken, e.g., having employees inspect the area regularly, are for the jury to decide.  *Cf. Conner v. Brookshire Brothers, Inc.*, 16-1148, 2018 WL 943289, at *4-*5 (W.D. La. Feb. 16, 2018) (denying the defendant's motion for summary judgment where the plaintiff and the merchant's employee testified that the plaintiff's fall was caused by water that leaked out of the defendant's cooler and said cooler had a history of leaking); with *Angelle v. Kroger Co.,* 12-01759, 2013 WL 6074626, at *3 (W.D. La. Nov. 18, 2013) (granting summary judgment against the plaintiff because although she alleged that the water that caused her to fall came from the defendant's ice machine, she testified that she did not know if the water was related to the ice machine, and affidavits by the defendant's employees affirmed that there was no known defect with the ice machine that caused the water to be on the floor).

be a reasonable possibility of causal connection between the accident and the disabling condition." *Housley v. Cerise,* 579 So.2d 973, 980 (La. 1991) (quoting *Lukas v. Insurance Company of North America*, 342 So.2d 591 (La. 1977) (internal quotation marks omitted).  Even if the presumption applies, a plaintiff is still required to provide "medical evidence establishing a causal connection between [the] medical condition and the accident." *Vargas v. Lee*, 317 F.3d 498, 502 n.3 (5th Cir. 2003).

Family Dollar does not specifically dispute that Jackson can rely on the *Housley* presumption.  In other words, it does not challenge Jackson's contention that he had no rotator cuff issues prior to this fall.  However, what Family Dollar does challenge is his use of Dr. Unkel to provide the medical evidence to establish causation:  both because he failed to identify Dr. Unkel as a witness and because Dr. Unkel did not perform his surgery.

Jackson admits that he did not list Dr. Unkel as a witness, but he was identified in discovery as a treating provider, and his medical records were provided.  He further contends that Dr. Unkel can provide causation testimony by establishing that he treated Jackson after the fall, that he referred him for an MRI, and that the result of the MRI indicated a rotator cuff injury, so he referred Jackson to a surgeon, which Jackson subsequently had.

First, as a treating provider, Dr. Unkel is not subject to the same rules on the identification of experts and provision of expert reports.  Dr. Unkel, while certainly a medical professional, is treated as a fact witness as the treating provider.  Treating providers are permitted to testify within their areas of expertise on their treatment of a plaintiff.  On the other hand, Jackson certainly should have identified Dr. Unkel as a potential witness.  Family Dollar contends that it was prejudiced by this failure because it did not have the opportunity to depose Dr. Unkel prior to the close of discovery.

Second, the Court considers whether Dr. Unkel's testimony should be allowed.  Jackson has not provided an explanation why counsel failed to identify Dr. Unkel as a potential witness, but the Court must also consider the importance of his testimony, the potential prejudice to Family Dollar, and the Court's ability to address that potential prejudice by means other than striking his testimony.  *See generally Reliance Ins. Co. v. La. Land & Expl. Co.*, 110 F.3d 253, 257 (5th Cir. 1997) (To show "good cause" for amendment to the scheduling order, a district court considers four factors: "(1) the explanation for the delay; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice.").

Dr. Unkel's testimony is critically important to Jackson's case.  Family Dollar is correct that medical evidence is necessary, in addition to the *Housley* presumption, to establish causation.  However, the Court agrees with Jackson that the presumption, along with his own testimony, and that of Dr. Unkel are sufficient in combination to meet his burden.  Dr. Unkel cannot testify about the nature of the surgery, of course, but he can support Jackson's testimony that he had no prior rotator cuff condition, that he saw Jackson within two days of the fall, that he sent Jackson for an MRI, that he reviewed the MRI, that he found that Jackson had a rotator cuff injury that, in his opinion, required surgery, and that he referred Jackson to a surgeon. Jackson can then testify, supported by his medical records, that he had surgery and went through physical therapy, and that he continues to suffer pain and sleeplessness (which is supported by his subsequent visits to Dr. Unkel).

Family Dollar has also been prejudiced in that it was denied the opportunity to depose Dr. Unkel prior to the close of discovery.  The Court can address that prejudice, however.  Trial in this matter is not set until September 2020.  The Court hereby reopens discovery for the limited

purpose of allowing Family Dollar, if it wishes, to depose Dr. Unkel.  Further, Family Dollar previously moved for a continuance which Jackson opposed.  If the time remaining between now and the September trial date is insufficient to schedule Dr. Unkel's deposition, Family Dollar may move for another continuance.   Family Dollar's Motion for Summary Judgment on the basis of lack of causation evidence is also DENIED.

### III.    CONCLUSION

For the foregoing reasons, Family Dollar's Motion for Summary Judgment [Doc. No. 26] is DENIED.   Discovery is re-opened for the limited purpose of allowing Family Dollar to depose Jackson's treating physician, Dr. Unkel.  If that deposition cannot be schedule prior to trial in September 2020, Family Dollar may move for another continuance.

MONROE, LOUISIANA, this the 9th day of June, 2020.


_____

TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE